## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TYANNA THOMAS**, <br><br> Plaintiff, <br><br> v. <br><br> **DISTRICT OF COLUMBIA**, <br><br> Defendant. | Case No. 21-cv-00584 (CRC) |

## <u>MEMORANDUM OPINION</u>

Claiming she was kept in jail well after her sentence ended, plaintiff Tyanna Thomas filed this action under 42 U.S.C. § 1983 against the District of Columbia for an alleged violation of her Fifth Amendment rights to due process. To state this kind of claim against the District, Thomas had to adequately allege the existence of a city policy or custom that caused the overdetention. The Court previously granted the District's motion to dismiss because Thomas's original complaint did not satisfy that requirement. But that dismissal was without prejudice and permitted Thomas to submit a proposed amended complaint. Her motion for leave to amend the complaint is now before the Court. This time, the District does not dispute the prerequisite that it has a policy or custom that governed the calculation of Thomas's sentence. Its opposition instead contends that the proposed amended complaint does not plausibly state a claim for an underlying due process violation.

The Court agrees. Thomas's claim is grounded in substantive due process. To state such a claim, her allegations must plausibly show egregious official conduct or grave unfairness in the discharge of legal responsibilities. Considering Thomas's allegations and the relevant sentencing orders, the proposed amended complaint falls short of this standard. The Court will therefore deny Thomas leave to amend the complaint and dismiss the case.

## I. Background

The Court draws the following background from the proposed amended complaint ("PAC"), ECF No. 13-2, as well as Thomas's sentencing orders issued by the D.C. Superior Court, Def. Exs. A–C, ECF Nos. 15-1–15-3.  Her sentences are "public records subject to judicial notice" and documents "referred to in the complaint" that "are integral to [her] claim[s]," and therefore, the Court may properly consider them at this stage of the case.  See Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004).

On January 9, 2020, Thomas was sentenced on two counts of simple assault in D.C. Superior Court.  PAC ¶ 8; Sentencing Order (Jan. 9, 2020), Def. Ex. A, ECF No. 15-1.  On count 1, she received 75 days of incarceration; on count 2, the judge sentenced her to time served. PAC ¶ 9.  The court ran the counts consecutive to each other.  See Sentencing Order (Jan. 9, 2020).  By this time, Thomas had already spent "approximately 75 days in jail."  PAC ¶ 11.  She alleges that the court intended this time-served credit to be applied to count 1 first, and thus the court knew this meant "the sentence would likely result in [her] immediate release."  See id. ¶¶ 10–13.  The D.C. Department of Corrections ("DOC"), however, applied the time-served credits to count 2 first and then started to hold Thomas for an additional 75 days on count 1.  See id. ¶ 14.

Approximately seven weeks later, on February 26, 2020, Thomas alleges that DOC was notified "by phone and email"—though it is unclear by whom—that she had completed her sentence.  PAC ¶ 16.  DOC did not release her.  On March 2, 2020, apparently on the motion of Thomas's counsel (who also represents her here), Reply Br. at 5, ECF No. 17, the sentencing judge issued an amended judgment.  PAC ¶¶ 18–19; First Am. Sentencing Order (Mar. 2, 2022), Def. Ex. B, ECF No. 15-2.  That judgment, much like the original, ordered consecutive sentences

with count 1 (75 days) to be served prior to count 2 (time served).  PAC ¶¶ 18–19; First Am. Sentencing Order (Mar. 2, 2022).  Again, DOC did not release Thomas.

One reason for DOC's application of time-served credits to count 2 (besides it being the "time-served" count) became apparent in another email exchange on March 4, 2020.  Marbin Portillo, DOC's Lead Legal Instrument Examiner, explained that in the context of consecutive counts, "[o]nce a count is sentenced to time served, the time served count will use all jail credit towards the time served count, no matter which count it may be."  PAC ¶ 24 (emphasis omitted). Portillo's email continued that, if the sentencing judge intended Thomas to be released, she should run the counts concurrently (not consecutively) in another amended judgment.  See id.  It is unclear with whom these emails were exchanged.  The next day, someone in the Executive Office of the Superior Court contacted DOC about this situation and relayed the court's apparent intent that the time-served credits be applied to count 1 first and count 2 second.  Id. ¶ 31.  That individual from the Superior Court confirmed DOC's position that "[a] 'time served' sentence means that whatever credit is available goes to that charge FIRST, no matter what."  Id. (emphasis omitted).

On March 6, 2020, the sentencing judge issued a second amended sentence.  See Second Am. Sentencing Order (Mar. 6, 2020), Def. Ex. C, ECF No. 15-3.  This time, the court listed a 75-day sentence for count 1 *and* count 2, ran the sentences concurrently, and below both 75-day sentences noted "**CREDIT FOR TIME SERVED**."  Id.  Thomas was released the same day.

A year later, Thomas filed this action against the District.  Both her initial complaint and proposed amendment bring a single Fifth Amendment due process claim against the District under 42 U.S.C. § 1983.  She also adds trailing common-law claims of negligence and false imprisonment under D.C. law.  The Court previously granted the District's motion to dismiss

because the original complaint failed to adequately plead a policy or practice as required by

Monell v. Department of Social Services, 436 U.S. 658 (1978).  See Thomas v. District of

Columbia, No. 21-cv-00584 (CRC), 2021 WL 5769443 (D.D.C. Dec. 6, 2021).  But the Court's

ruling invited Thomas to seek leave to file an amended complaint, along with a proposed

amendment.  Id. at *3.  She has accepted that invitation.  In addition to adding certain allegations

about the existence of the District's policy or practice with respect to applying time-served

credits, Thomas seeks to add a false imprisonment claim against DOC employee Marbin Portillo.

See PAC ¶¶ 56–58.  The Court held a hearing on the motion on June 9, 2022.

## II.   Legal Standards

Thomas's proposed amended complaint comes after the time for amending as a matter of

course, so she may amend only with leave of the Court (or with the defendant's consent, which

she does not have).  Fed. R. Civ. P. 15(a).  Federal Rule of Civil Procedure 15(a) gives courts

discretion whether to grant leave to amend, but that discretion is limited; leave "should be freely

given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated

failure to cure deficiencies, or futility."  Richardson v. United States, 193 F.3d 545, 548–49

(D.C. Cir. 1999).  A proposed amended complaint is futile if it would not survive a motion to

dismiss.  Thus, when a defendant challenges a proposed amendment as futile, courts apply the

same standards as they would on a motion to dismiss.  See In re Interbank Funding Corp. Sec.

Litig., 629 F.3d 213, 215–16 (D.C. Cir. 2010).  The party opposing amendment bears the burden

of showing why leave to file an amended pleading should not be granted.  Smith v. Café Asia,

598 F. Supp. 2d 45, 48 (D.D.C. 2009).

The standard applicable here is Federal Rule of Civil Procedure 12(b)(6).  "To survive a

motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  A court "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up).  At this stage, a court may also consider "public records subject to judicial notice" and documents "referred to in the complaint" that "are integral to [a plaintiff's] claim."  <u>Kaempe</u>, 367 F.3d at 965.  And a court need not "accept as true the complaint's factual allegations insofar as they contradict" those public records and documents.  <u>See id.</u> at 963.

### III.  Analysis

    A.  <u>Substantive Due Process Overdetention Claim</u>

Thomas brings her Fifth Amendment due process claim under § 1983, which provides a cause of action for individuals whose federal constitutional rights have been violated.  To state a claim against a municipality, a plaintiff "must allege" (1) "a violation of [her] rights under the Constitution or federal law," and (2) "that the municipality's custom or policy caused the violation."  <u>Warren v. District of Columbia</u>, 353 F.3d 36, 38 (D.C. Cir. 2004).  The custom here, as allegedly stated explicitly by Lead Legal Instrument Examiner Portillo, is DOC's practice of applying all time-served jail credits toward a time-served count, no matter which sequential count it may be.  <u>See</u> PAC ¶¶ 24, 31.  In this round of briefing, the District does not contest the existence of that practice and instead focuses its opposition on whether Thomas has alleged a constitutional violation.  <u>See</u> Opp'n at 7–11, ECF No. 15; <u>see also</u> Hr'g Tr. (Rough) at 18 (June 9, 2022) (counsel acknowledging the "custom," and noting that plaintiff "defined it pretty well in

the amended complaint"). The Court thus turns to whether Thomas has adequately alleged a constitutional violation under the Due Process Clause.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). Inmates thus have a "deeply rooted" "liberty interest" to be "released within a reasonable time after the reasons for their detentions have ended." See Barnes v. District of Columbia, 793 F. Supp. 2d 260, 274–75 (D.D.C. 2011). Courts have analyzed overdetention claims under the framework of substantive due process. See Smith v. District of Columbia, 306 F. Supp. 3d 223, 243–45 (D.D.C. 2018); Barnes, 793 F. Supp. 2d at 274–75.[1]

A substantive due process claim requires "egregious official conduct" that is "arbitrary in the constitutional sense," County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (citation omitted), "conduct that 'shocks the conscience'" or that "interferes with rights 'implicit in the concept of ordered liberty.'" United States v. Salerno, 481 U.S. 739, 746 (1987) (citation omitted); Lewis, 523 U.S. at 847 n.8 (noting "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."). As the D.C. Circuit has articulated the standard, "a plaintiff must at least show that state officials are guilty of grave unfairness in the discharge of their legal responsibilities." Silverman v. Barry, 845 F.2d 1072, 1080 (D.C. Cir. 1988); Elkins v. District of

---

[1] While substantive due process claims are "generally analyzed under the Due Process Clause of the Fourteenth Amendment, . . . the District of Columbia is not a state," so due process claims against it are evaluated under only the Fifth Amendment. See Butera v. District of Columbia, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001); Gormly v. Walker, No. 21-cv-2688 (CRC), 2022 WL 1978731, at *3 n.4 (D.D.C. June 6, 2022) (Cooper, J.).

Columbia, 690 F.3d 554, 561–62 (D.C. Cir. 2012).  "[M]ere negligence," however, is not enough

to establish a substantive due process violation.  See Smith, 306 F. Supp. 3d at 243.

The parties debate when the basis for Thomas's detention ended.  Resolving that question

requires interpreting the Superior Court's sentencing orders, and will help answer whether the

challenged action of continuing to detain her was sufficiently egregious and conscience-shocking

to violate due process.  If the sentencing orders reflected that "the reasons for [Thomas's]

detention[] ha[d] ended," and she was not "released within a reasonable time after" her term of

incarceration ended, then she would plausibly state a claim.  See Barnes, 793 F. Supp. 2d at 274–

75.  That is, not releasing Thomas within a reasonable time after the expiration of her sentence

would be "grave[ly] unfair[]" and akin to "a deliberate flouting of the law," or here, the

sentencing order.  See Silverman, 845 F.2d at 1080.  As will be explained, however, the Court

does not find that to be the case here.

Starting with the Superior Court's original sentence, it read:

> **Count 1 Simple Assault** Sentenced to 75 day(s) incarceration . . .
> **Count 2 Simple Assault** Sentenced to Time Served . . .
> **\*\*\* COUNT 1 & 2 TO RUN CONSECUTIVE TO EACH OTHER\*\*\***

Sentencing Order (Jan. 9, 2020).  The amended sentence (apparently granted on

Thomas's counsel's motion, Reply Br. at 5) likewise read:

> **Count 1 Simple Assault** Sentenced to 75 day(s) incarceration . . .
> **Count 2 Simple Assault** Sentenced to Time Served . . .
> **\*\*\*COUNT 1 & 2 TO RUN CONSECUTIVE TO EACH OTHER\*\*\***
> **\*\*\* COUNT 1 IS TO BE SERVED PRIOR TO COUNT 2\*\*\***

Am. Sentencing Order (Mar. 2, 2020).  This Court does not see any material difference between

these two orders.  Thomas, however, contends that DOC should have applied her 75 days of

time-served credit to count 1 first (because it was to be served first), and the amended sentence

confirms that interpretation.  That approach would leave zero days of incarceration on count 1

and a time-served sentence on count 2 (also zero days of incarceration), meaning she would have completed her sentence on January 9, 2020—the same day it was handed down.[2]

But there is another reasonable (and more straightforward) reading of these sentencing orders—even setting aside the challenged policy regarding time-served credits. That is: Thomas would first serve 75 days in jail on count 1, and then she would get time-served credit for count 2 (which was, after all, the time-served count) from the 75 days she had already spent in jail. Under this calculation, she would have been released in late-March 2020. The point is that the first two sentencing orders are, being generous to Thomas, ambiguous, and they are susceptible to a straightforward reading that cuts against her position.

The Court concludes that there is no substantive due process violation for overdetention because DOC reasonably read an arguably ambiguous sentencing order to mean that Thomas's term of incarceration has not yet expired, and thus it had a lawful basis for her detention. In light of how the sentencing orders were written, it is easy to see that an official tasked with interpreting Thomas's sentence would have "a good faith belief" that it ordered her to be incarcerated for 75 days after January 9, *following which* her time-served credit would kick in. See Elkins, 690 F.3d at 562 (affirming summary judgment against a substantive due process claim where officials had "a good faith belief" that a plaintiff exceed her construction permits and "well-founded doubts about the scope of the actual construction"). That interpretation of

---

[2] The Court notes, however, that Thomas "does not dispute that she was [also] being held" as a result of another criminal matter "from November 1, 2019, until February 26, 2020." Pl. Notice at 1, ECF No. 19. She concedes that "she would not have been released in [the case at issue here] immediately." Id. The upshot is that, even if Thomas had a viable overdetention claim, it would *at most* run from February 26 (or March 2) to March 6, though that length still easily clears the "benchmark for finding a constitutional violation." See Smith, 306 F. Supp. 3d at 243 (collecting cases and suggesting "the outer bounds for releasing [a] prisoner should be less than 48 hours.").

these orders does not constitute a "deliberate flouting of the law," which may "show the 'grave unfairness' that [substantive due process] requires." See Tri Cnty. Indus., Inc. v. District of Columbia, 104 F.3d 455, 459 (D.C. Cir. 1997); Silverman, 845 F.2d at 1080. Put differently, the most straightforward reading of the sentencing orders here shows that "the reasons for the[] [inmate's] detention[]"—a 75-day sentence for an assault conviction on count 1—"ha[d] [not] ended." See Barnes, 793 F. Supp. 2d at 275. Thus, not releasing Thomas by March 2 was not egregious, conscious-shocking, or gravely unfair.

DOC was also entitled to rely solely on the orders from the sentencing judge herself, rather than on third-party communications, to discern the judge's intent in the orders. The basis for confinement stems from the court's judgment and orders—"a criminal conviction" and sentence, Barnes, 793 F. Supp. 2d at 274–75—not from after-the-fact emails or phone calls from, for instance, court administrative staff or defense counsel. See PAC ¶¶ 16, 23–24, 31. Here, DOC did receive third-party input suggesting that the sentencing judge intended Thomas to be released earlier, see id., which in hindsight apparently turned out to be correct. But even in the light most favorable to Thomas, those allegations "at most show[] 'agency confusion'" and "mixed messages," "honest mistakes," or "even negligence in the performance of official duties"—"not the 'grave unfairness' required for a substantive due process claim." See Elkins, 690 F.3d at 562 (quoting Silverman, 845 F.2d at 1080); cf. Steinberg v. District of Columbia, 901 F. Supp. 2d 63, 74 (D.D.C. 2012) (no substantive due process violation when "defendants' actions (or non-actions) in depriving [plaintiff] of [a protected property] interest were not 'legally irrational.'" (citation omitted)). Again, the action (or inaction) here was not sufficiently egregious or conscious-shocking to trigger a substantive due process violation.

This conclusion is bolstered by the fact that DOC released Thomas on the same day that the Superior Court Judge clarified the sentence in another amended order.  That order read:

> **Count 1 Simple Assault** Sentenced to 75 day(s) incarceration . . .
> **Count 2 Simple Assault** Sentenced to 75 day(s) incarceration . . .
> **\*\*\* CREDIT FOR TIME SERVED\*\*\***
> **\*\*\* COUNT(S) 1 & 2 TO RUN CONCURRENT TO EACH OTHER\*\*\***

See Second Am. Sentencing Order (Mar. 6, 2020).  The only sensible reading of this order, unlike the others, is that Thomas was sentenced to 75 days of incarceration in total for both counts, and her time-served credits applied to that overall 75-day term.  Under that calculation, she was clearly entitled to release.  And she was promptly released.[3]

Thomas's main rebuttal to the Court's conclusion is that D.C. law requires time-served credit to be applied to counts in the sequence in which they are imposed, meaning to count 1 first, count 2 second, and so on.  She misreads the authority that she cites for this proposition, D.C. Code § 23-112.  That statute simply states "[a] sentence imposed on a person for conviction of an offense shall, unless the court imposing the sentence expressly provides otherwise, run consecutively to any other sentence imposed[.]"  All that means is that sentences are presumptively consecutive unless the court says otherwise—which the Superior Court did not do here until March 6, 2020, when it expressly provided that Thomas's sentences would run concurrently.  Section 23-112 says nothing at all about time-served credits, let alone the order in which they should be applied.

---

[3] While some cases have held that delays in releasing an inmate as short as eleven hours were enough to present an overdetention claim to a jury, see, e.g., Lewis v. O'Grady, 853 F.2d 1366, 1370 (7th Cir. 1988), the record here indicates that Thomas was released within three hours of the final sentencing order.  See Second Am. Sentencing Order (Mar. 6, 2020) (12:10 p.m. timestamp); DOC Inmate Release Records at 1, Def. Ex. D, ECF No. 15-4 (indicating a 2:58 p.m. release time).

The parties also spar over a Federal Bureau of Prisons Manual, which reflects essentially the same policy as the District's own unwritten practice on applying time-served credits.  See Hr'g Tr. (Rough) at 17; U.S. Dep't of Justice, Bureau of Prisons, Program Statement, District of Columbia Sentence Computation Manual, P5880.33 (July 9, 2010), available at https://www.bop.gov/policy/progstat/5880_033.pdf.  Most relevant here, Chapter 6 ("Time Served Court Order") provides: "A consecutive count or sentence will be processed in accordance with the manner in which it was imposed in relation to the time served count.  If only one other count or sentence existed, the consecutive count or sentence would commence on the date of the time served order."  Id., Ch. 6.5.  In the first two sentencing orders, the "time served count" was count 2, and "only one other count . . . existed"; under the policy, then, count 1's sentence of 75 days thus "commence[d] on the date of the time served order," January 9, 2020.  The Manual further provides, "[i]f the time served order pertains to one . . . count[] but not all the counts"—as was the case for the first two sentencing orders here—"the other count . . . will remain in effect," and "[o]ther sentences will remain in effect."  Id., Ch. 6.3.  Therefore, again, the 75-day sentence for count 1 remained in effect on January 9.

Thomas counters that the federal BOP policy is consistent with D.C. Code § 23-112 and mandates that her time-served credits be applied to count 1 first.  As explained, however, she is mistaken; the policy is consistent with how DOC calculated Thomas's sentence here.

In sum, Thomas's federal due process claim in the proposed amended complaint could not survive a motion to dismiss and is futile.

### B.  D.C. Common-Law Claims

The Court stated previously that it would "follow the 'usual' approach and decline to exercise supplemental jurisdiction over the common-law claims."  Thomas, 2021 WL 5769443,

at *3 (quoting <u>Shekoyan v. Sibley Int'l</u>, 409 F.3d 414, 424 (D.C. Cir. 2005)).  Balancing "considerations of judicial economy, convenience, fairness, and comity," <u>Trimble v. District of Columbia</u>, 779 F. Supp. 2d 54, 60 (D.D.C. 2011), the Court sees no reason to depart from its initial inclination.  This case is in its nascent stage, and Thomas may still pursue her common-law claims in D.C. Superior Court, <u>see</u> D.C. Code § 12-301 (three-year statute of limitations), so there are no gains in judicial economy or fairness in declining to exercise supplemental jurisdiction.  Whether Thomas's common-law claims ultimately fail for the same reasons as her federal due process claim depends on D.C. law, and the parties' briefing on those issues is slim. This Court will leave it for the Superior Court to decide these claims, if Thomas chooses to pursue them there.

## IV.   Conclusion

For these reasons, the Court will deny the motion for leave to file an amended complaint, decline to exercise supplemental jurisdiction over the common-law claims, and dismiss this case. The case is dismissed with prejudice as to the federal claim and without prejudice as to the common-law claims.  A separate Order accompanies this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>July 19, 2022</u>